**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

RUNBUK, INC.,

     *Plaintiff*,                          Case No. 25-cv-25413-FAM

v.

ICE CAP ADVENTURES LTD. and
DAVID KELLY,

     *Defendants.*

_____/

**DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES**

Defendants, ICE CAP ADVENTURES LTD. ("Ice Cap") and DAVID KELLY ("Kelly") (collectively "Defendants"), hereby file their answer to Plaintiff's, Runbuk, Inc. ("Runbuk"), Complaint (ECF No. 1.) as follows:

**NATURE OF THE CASE**

1. Admitted as to the nature of the case. Denied that Defendants have committed any trademark infringement, unfair competition, false designation of origin under either the Trademark Act, 15 U.S.C §§ 1051 *et seq.* or the laws of the State of Florida.

2. Denied that the World Marathon Challenge ("WMC") was the first event to host consecutive marathons on every continent in a single week. Without knowledge as to the remaining allegations, therefore denied.

3. Without knowledge, therefore denied.

4. Without knowledge, therefore denied.

5. Admitted that Ice Cap started The Great World Race ("TGWR") in 2023, and that it uses the mark "7 marathons 7 continents 1 week" in connection thereof. All other allegations are denied.

1

6. Admitted that Kelly worked as a physician on previous WMC races organized by the prior owner of the WMC. Denied that Kelly ever worked as a physician on any race organized by Runbuk. All other allegations are denied.

7. Admitted that Ice Cap applied for registration of the mark "777" in connection with the organization and operation of TGWR. All other allegations are denied.

8. Denied.

## JURISDICTION AND VENUE

9. Admitted for jurisdictional purposes only.

10. Admitted for jurisdictional purposes only.

11. Admitted for venue purposes only.

12. Admitted for venue purposes only.

## THE PARTIES

13. Without knowledge, therefore denied.

14. Admitted.

15. Admitted.

16. Admitted for jurisdictional purposes only. Denied that Defendants have engaged in any tortious acts in the State of Florida.

17. Admitted for jurisdictional purposes only. Denied that Defendants have committed any tortious acts in the State of Florida.

## FACTUAL BACKGROUND

A. **Defendants Respond to this Subheading as Follows:**

18. Without knowledge, therefore denied.

19.     Denied that the WMC was the first and only event involving runners completing consecutive marathons on all seven continents within one week. As to the remaining allegations, without knowledge, therefore denied.

20.     Without knowledge, therefore denied.

21.     Admitted.

22.     The USPTO registrations referenced (U.S. Reg. No. 7476660; U.S. Reg. No. 7435005; and U.S. Reg. No. 6583837) speak for themselves. To the extent a response is required, without knowledge as to Mr. Donovan's actions, therefore denied.

23.     The WMC Sales Agreement speaks for itself. To the extent a response is required, without knowledge, therefore denied.

24.     Denied that Mr. Donovan notified Kelly, in his capacity as a vendor of the WMC, of Runbuk's ownership of WMC. Without knowledge as to Mr. Donovan's communications with vendors of WMC, therefore denied.

25.     The referenced USPTO trademark application (Serial No. 98830410) speaks for itself. To the extent a response is required, without knowledge, therefore denied.

**B.      Defendants Deny Any Unlawful Use of Runbuk's Trademarks and Respond to This Subheading as Follows:**

26.     Admitted that Kelly worked as a travelling support doctor for the WMC on four occasions, all during the period when WMC was owned by Mr. Donovan. Any implications that Kelly worked for the WMC during Runbuk's ownership are denied.

27.     Admitted.

28.     Denied. In 2023, Ice Cap began promoting the TGWR. Further denied that TGWR was founded on the same general concept as WMC.

29.     Denied.

30.     Denied.

31.     Admitted that in 2025, TGWR and WMC used three of the same locations, Cape Town, Perth, and Miami. All other allegations are denied.

32.     Denied.

33.     Admitted that Runbuk reached out to Defendants in connection with this dispute, which included a series of harassing, threatening, and defamatory emails. All other allegations and implications of wrongdoing are denied.

34.     The USPTO trademark application (Serial No. 98772734) speaks for itself. To the extent a response is required, denied that Kelly individually applied for the "777" trademark. Further denied that Defendant Kelly had any knowledge of Runbuk's alleged common law mark.

35.     Without knowledge as to the reason for the USPTO suspension of Runbuk's trademark application for the mark "777", therefore denied. Without knowledge as to Runbuk's alleged first use date of the "777" mark, therefore denied. The opposition filed by Runbuk with the USPTO (Opp. No. 91299432) speaks for itself.

36.     Admitted that Defendants created a website for TGWR. Exhibit B to the Complaint speaks for itself. Otherwise, denied.

37.     Admitted that Defendants used social media to advertise TGWR's 2024 race using "7 marathons 7 continents in one week" and "7 marathons 7 continents 1 week." Admitted that Exhibit C purports to show a comment in a TGWR's post by user L Ligon Sauls, stating "this is what my friend did earlier this year." The rest of the allegations are denied.

38.     Admitted that Ice Cap uses "7 marathons 7 continents 1 week" in their physical banners and finish line decorations. The remaining allegations are denied.

39. Admitted that the post reproduced as Exhibit E to the Complaint purports to be a post from TGWR's Instagram account, that "7 marathons 7 continents 1 week" is branded on the finish line banner shown in that post, and that the phrase "777 Challenge" is used in that post. Admitted that Exhibit E shows a comment on the post by user @gerace_andrew. All other allegations are denied.

40. Admitted that Exhibit F to the Complaint purports to show TGWR's Instagram account sharing stories from TGWR participants. All other allegations are denied.

41. Denied.

42. Denied that Defendants seek to create or perpetuate any confusion. Any implications that Runbuk has any protectable interest in the phrase 7 DAYS 7 MARATHONS 7 CONTINENTS are further denied. Regarding the post attached to the Complaint as Exhibit G, without knowledge, therefore denied.

43. Without knowledge, therefore denied.

44. Without knowledge, therefore denied.

45. Without knowledge, therefore denied. Any implication that WMC is the source of the "777 Challenge" mark is expressly denied.

46. Without knowledge, therefore denied.

## COUNT I
### (Trademark Infringement under 15 U.S.C. § 1114)

47. Defendants repeat the answers in paragraphs 1 through 46 as if fully set forth herein.

48.     The USPTO registrations referenced (U.S. Reg. No. 7476660; U.S. Reg. No. 7435005; U.S. Reg. No. 6583837[1]) speak for themselves. Otherwise, denied, including to the extent this paragraph implies the referenced USPTO registrations are registered on the Principal Register.

49.     Without knowledge, therefore denied.

50.     Denied.

51.     Admitted that TGWR uses "7 marathons 7 continents 1 week" and "7 marathons 7 continents one week." All other allegations are denied.

52.     Denied.

53.     Denied.

54.     Denied.

55.     Denied.

### COUNT II
### (False Designation of Origin & Federal Unfair Competition under 15 U.S.C. § 1125)

56.     Defendants repeat the answers in paragraphs 1 through 46 as if fully set forth herein.

57.     Denied.

58.     Denied.

59.     Admitted that Ice Cap promotes TGWR online to participants across the nation and from various countries. All other allegations are denied.

60.     Denied.

61.     Denied.

---

[1] Runbuk mistakenly repeats the registration number for the mark "7 Marathons 7 Continents 7 Days", U.S. Reg. No. 7476660, to the mark "7 Marathons Club". The correct registration number for 7 Marathons Club is U.S. Reg. No. 6583837.

6

62.     Denied.

63.     Denied.

## COUNT III
### (Common Law Trademark Infringement)

64.     Defendants repeat the answers in paragraphs 1 through 46 as if fully set forth herein.

65.     Denied.

66.     Denied.

67.     Denied

68.     Denied.

69.     Denied.

## COUNT IV
### (Common Law Unfair Competition)

70.     Defendants repeat the answers in paragraphs 1 through 69 as if fully set forth herein.

71.     Denied.

72.     Denied.

73.     Denied.

74.     Denied.

75.     Denied.

## COUNT V
### (Unjust Enrichment)

76.     Defendants repeat the answers in paragraphs 1 through 46 as if fully set forth herein.

77.     Denied.

78.     Denied.

79.     Denied.

## COUNT VI
### (Declaratory Judgment for Legal Ownership of 777 Trademark & Invalidity of Defendants' 777 Application Serial No. 98772734)

80. Defendants repeat the answers in paragraphs 1 through 46 as if fully set forth herein.

81. Denied.

82. Denied.

83. Denied.

84. Denied.

85. Admitted that Runbuk is requesting declaratory judgment. Denied that Runbuk is entitled to such relief.

86. Denied.

## COUNT VII
### (Declaratory Judgment for Invalidity of Defendants' AROUND THE WORLD IN 7 DAYS Application U.S. Serial No. 98117019)

87. Defendants repeat the answers in paragraphs 1 through 46 as if fully set forth herein.

88. Denied.

89. Denied.

90. Admitted that Runbuk is requesting declaratory judgment. Denied that Runbuk is entitled to such relief.

91. Denied.

92. Denied.

93. Denied.

94. Denied.

95. Denied.

8

**PRAYER FOR RELIEF**

**WHEREFORE**, Defendants ask that the Court enter judgment in their favor and against Runbuk in all counts, as well as an award of attorney's fees and costs on behalf of Defendants, and any other relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Defendants demand a jury trial on all issues triable by a jury.

**AFFIRMATIVE DEFENSES**

1.      **No Use of the Mark "777."** Runbuk has no protectable interest in the mark "777" because neither Runbuk nor the WMC used the mark "777." The mark "777" was not included among the trademarks transferred to Plaintiff in the December 2022 WMC Sales Agreement, which identified the complete list of trademarks transferred. *See* Sales Agreement attached hereto as **Exhibit 1.** Moreover, the prior owner of the WMC, Richard Donovan, has stated under oath that during his ownership of the WMC, from 2015 until 2023, the WMC never used or considered "777" to be its trademark. Exhibit 1 at § IV, Appx 1. (ECF No. 24-18 at ¶¶ 3,4.) Further, neither Runbuk nor the WMC were the first to use the "777" mark, which was used by third parties prior to any alleged use by Runbuk or the WMC. Therefore, Runbuk does not have protectable trademark rights over the "777" mark because Runbuk cannot prove continuous use of this mark since 2015.

2.      **Abandonment of the Mark "777."** To the extent that Runbuk alleges that the mark "777" was first used in connection with WMC on January 13, 2015, any such trademark rights were abandoned and withdrawn through nonuse because the mark was not used in commerce in connection with the WMC from 2015 until December of 2023, during Mr. Donovan's ownership

9

and operation of the WMC, or otherwise continually used in commerce from 2015 to the present. (ECF 24-18 at ¶¶ 3,4.)

3.     **Lack of Standing to Assert Violations of the Mark "777."** Runbuk lacks standing to assert Count II, Count III, Count IV, Count V, and Count VI in connection with the mark "777" because Runbuk is not the owner of this mark. Appendix 1 to the WMC Sales Agreement identified the complete list of trademarks transferred to Plaintiff, and "777" was not included. **Exhibit 1.** Hence, to the extent that Mr. Donovan had any trademark rights over the mark "777" when he executed the Sales Agreement with Runbuk, Mr. Donovan did not transfer and otherwise retained ownership of the mark "777." In addition, Runbuk has not developed any rights of its own in "777" through continuous use of that mark in commerce. Accordingly, Plaintiff has no standing to assert trademark claims based on that mark.

4.     **Laches.** Runbuk's causes of action in connection with the "777" mark are precluded by the doctrine of laches. Mr. Donovan founded the WMC in 2015, and yet he never attempted to register or otherwise take any actions to assert ownership over the mark "777." (ECF No. 24-18 at ¶¶ 3,4). When Mr. Donovan sold the WMC to Runbuk, "777" was not listed as one of the WMC's trademarks. **Exhibit 1** at Appx. 1**.** Then, for nearly two years, from December of 2022 until October 31, 2024, Runbuk failed to apply for registration of the mark "777." In the meantime, the activities by the Defendants that Runbuk complains of began in 2023 (ECF No. 1 at ¶ 28). Yet, Runbuk only applied for registration of this mark after Ice Cap had been operating for at least one year and after Ice Cap applied for registration of the mark "777" on September 25, 2024. *See* Ice Cap's application attached hereto as **Exhibit 2** and Runbuk's application attached hereto as **Exhibit 3**. Runbuk then waited another year, until November 2025, to initiate the instant

lawsuit. Allowing Runbuk to assert a right or claim over the "777" mark after this non-excusable delay would be unduly prejudicial to Defendants.

5. **Estoppel.** Runbuk is estopped from asserting that the WMC has used the mark "777" since 2015 because the prior owner of the WMC represented that neither he nor the WMC used this mark from 2015 through 2023. (ECF No. 24-18 at ¶¶ 3, 4.)

6. **Good Faith Prior Use of the "777" Mark**. Ice Cap, without actual or constructive knowledge of Runbuk's alleged prior use of the "777" mark, used and applied for registration of the "777" mark before Runbuk used and applied for registration of this mark.

7. **Descriptive Fair Use of "7 MARATHONS 7 CONTINENTS 7 DAYS" and "7 MARATHONS 7 CONTINENTS 7 CONSECUTIVE DAYS."** The alleged use of these phrases by Defendants in the Complaint, for example the reposting on TGWR's Instagram of stories by TGWR's participants using these phrases or variations thereof, was done other than as a mark and rather for the purposes of describing Defendants' athletic event in question; it was used in a descriptive sense; and it was done in good faith.

8. **Ineligibility of "7 MARATHONS 7 CONTINENTS 7 DAYS" and "7 MARATHONS 7 CONTINENTS 7 CONSECUTIVE DAYS" for Trademark Protection**. These marks are not entitled to trademark protection as they are generic or merely descriptive of an athletic challenge involving running seven marathons on seven continents within a short timeframe. In fact, the USPTO repeatedly refused registration of these phrases on the Principal Register on the grounds that they are merely descriptive and do not function as source identifiers. Further, the terms lack distinctiveness and have not acquired secondary meaning, nor are the phrases capable of distinguishing Runbuk's goods or services.

9.      **Trademark Misuse.** Relating to the phrases "7 marathons 7 continents 7 days" and "7 marathons 7 continents 7 consecutive days," Runbuk raises trademark infringement and related claims that do not apply to these descriptive phrases. Both phrases registered on the Supplemental Register in mid-2024, reflecting that the marks are descriptive and lack acquired distinctiveness. Indeed, allowing Runbuk to have a monopoly over these alleged trademarks would prohibit any competitor from describing the type of athletic event they offer—one that includes 7 marathons on 7 continents in 7 days. This will effectively hamstring the ability of any competitor to meaningfully compete with Runbuk as they will not even be able to tell consumers what kind of athletic event they offer, how long it is, what it consists of, etc.  Further, Runbuk premises its request for a preliminary injunction (ECF No. 6) on this same descriptive phrase. Pertaining to the mark "777", Runbuk claims ownership even though it neither purchased this mark from another nor developed its own common law rights in this mark, or at least, it has abandoned this mark by failing to use it continuously in commerce. *See generally* Affirmative Defense Nos. 1-5. Indeed, Runbuk only attempted to claim ownership of this mark after Ice Cap filed its own trademark application for the mark. *See* Exhibit 2; Exhibit 3. Rather than legitimate concerns of trademark infringement, Runbuk's claims in this regard are an attempt to stifle legitimate competition that go beyond what is permissible under trademark law. Further still, Runbuk and its representatives have contacted TGWR's vendors and participants in an effort to discredit this competing event, accusing Ice Cap and Mr. Kelly of illegal conduct and deceptive practices, claiming that the WMC is the real event while TGWR is nothing more than a "copycat," and even threatening legal action against TGWR participants. Runbuk's founders have further attempted to disparage Defendants by promoting the name "Not Great World Race", creating social media accounts accusing TGWR, Ice Cap, and Mr.

12

Kelly of illegal activity. By way of example, a reproduction of one of these posts can be found below:



Moreover, Runbuk's founder has applied for trademark registration of this disparaging phrase, "Not Great World Race" with the USPTO, which resulted in the USPTO entering a judgment against Mr. Wang in connection with this misconduct. This pattern of conduct reflects an effort to suppress lawful competition rather than protect legitimate trademark rights and constitutes trademark misuse.

10.     **Unclean Hands.** Runbuk's claims are barred by the doctrine of unclean hands. Runbuk and its agents have engaged in inequitable conduct related to the asserted marks. Runbuk has contacted vendors, participants, and industry participants with misleading and false assertions regarding Defendants and Defendants' event. Runbuk and its owners have made threats and accusations against Defendants and TGWR' participants intended to disrupt business relationships. Additionally, Runbuk comes to this Court asking for protection of trademark rights it knows it does not hold, as evidenced by the fact that neither "777" nor "AROUND THE WORLD IN 7 DAYS" were listed in the WMC Sales Agreement, evidencing that Runbuk cannot prove WMC's continuous use over these marks since 2015. In addition, Runbuk cannot prove that it has since developed its own common law rights in these marks. Moreover, Runbuk's founders has created social media accounts and applied for registration with the USPTO the phrase "Not Great World Race" to discredit TGWR. As further evidence of unclean hands, Runbuk is using Canadian and American-sanctioned Russian aircraft, Volga-Dnepr, to transport its participants from Antarctica to South Africa. Such disregard for the laws of the United States further shows that Runbuk has not come to this Court with clean hands, a pre-requisite to invoking the Court's assistance.

11.     **Sham Litigation in Violation of Anti-Trust Laws.** Runbuk is using its purported trademark rights to restrain competition and attempt to monopolize the business of organizing seven marathons across seven continents within seven days. To this end, Runbuk now claims ownership of the mark "777," even though the WMC's prior owner has stated under oath that the WMC never used or considered this to be its mark, and when other similar events have used the "777" mark in connection with their events prior to Runbuk's attempted registration of this mark. (ECF No. 24-18 at ¶¶ 3,4; ECF No. 24-3, 24-4.) Runbuk has also challenged registration of the

14

mark "AROUND THE WORLD IN 7 DAYS" without a valid basis. It is quite remarkable that neither of these marks were listed in the WMC Sales Agreement, evidencing Runbuk's knowledge of its lack of ownership claim over these marks. **Exhibit 1.** In addition, through this litigation Runbuk is attempting to create a monopoly over descriptive marks such as "7 MARATHONS 7 CONTINENTS 7 DAYS" and "7 MARATHONS 7 CONTINENTS 7 CONSECUTIVE DAYS," as well as variations thereof such as "7 MARATHONS 7 CONTINENTS 1 WEEK," despite being repeatedly instructed by the USPTO that these marks are not protectable due to being merely descriptive. The very filing of this lawsuit is a sham to cover an attempt to interfere directly with the business relationships of a competitor, in violation of antitrust laws.

## RESERVATION OF RIGHTS

Runbuk and Mr. Kelly reserve the right to amend and supplement these affirmative defenses as appropriate.

-   *Space Intentionally Left Blank –*
    *See Following Page for Counterclaim*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

RUNBUK, INC.,

    *Plaintiff and Counter-Defendant*                Case No. 25-cv-25413-FAM

v.

ICE CAP ADVENTURES LTD. and
DAVID KELLY,

    *Defendants and Counter-Plaintiffs.*

_____/

## COUNTERCLAIM

Defendants and Counter-Plaintiffs ICE CAP ADVENTURES LTD. ("Ice Cap") and DAVID KELLY ("Kelly") hereby file this Counterclaim against Runbuk ("Runbuk"), and in support thereof state as follows:

### THE PARTIES, JURISDICTION, AND VENUE

1.  Counter-Plaintiff Ice Cap is a private company limited by shares incorporated under the laws of Ireland with its principal place of business located at 74 Mountain Close, Cartron View, Sligo, Ireland F91Y7K3.

2.  Counter-Plaintiff Kelly is an individual domiciled in Portugal.

3.  Counter-Defendant Runbuk is a corporation organized under the laws of the State of Delaware with its principal place of business located at 433 Airport Blvd. Suite 415, Burlingame, California, United States 94010.

4.  This Court has personal jurisdiction over Runbuk as Runbuk voluntarily submitted itself to the jurisdiction of the Court by virtue of filing the instant lawsuit.

5.  This Court has subject matter jurisdiction over the claims in this Counterclaim and Third-Party Complaint pursuant to 28 U.S.C. §§ 1331 and 1338, as well as 15 U.S.C. § 1119.

16

6.      Further, this Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332 as there is complete diversity of citizenship between the parties and the matter in controversy exceeds the sum of $75,000.00.

7.      This Court has supplemental jurisdiction over the claims arising under Florida state law pursuant to 28 U.S.C. § 1367 because the state law claims are closely related to the federal claims, form part of the same case or controversy, and derive from a common nucleus of operative fact.

8.      Venue is proper in this district under 28 U.S.C. § 1391(b) because substantial events giving rise to this counterclaim occurred in this district and the Counter-Defendant brought this instant action in this judicial district.

<b>FACTUAL BACKGROUND COMMON TO ALL COUNTS</b>

**A.      <u>Relevant Facts Before the Establishment of the World Marathon Challenge</u>**

9.      Mr. Kelly is a doctor and international endurance athlete. He has combined both of his passions by attending sporting events all over the world as a participant, spectator, supporter, and on occasion to provide medical back up care to other athletes, at times for no compensation.

10.     Given his involvement in endurance events since his teenage years, Mr. Kelly became aware of a "7x7x7 Challenge" by Ranulph Fiennes and Dr. Michael Stroud in 2003, in which the runners attempted to be      the first to complete seven marathons on seven continents in seven days. For reference, a selection of media stories that covered the challenge is attached hereto as **Composite Exhibit 4**, including a Runner's World cover page in February 2004 that headlined the feat as "7 Marathons, 7 Continents, 7 Days: One Amazing Story."

11.     After this initial challenge by Mr. Fiennes and Mr. Stroud, other athletes across the world, including Mr. Kelly, became interested in this niche of endurance events. For example,

**Exhibit 5** hereto evidences a news article titled "7 marathons 7 days 7 continents" about a man by the name of Dave Heeley who also claimed to have completed a "777 Challenge" in 2008.

12.   In 2009, Richard Donovan ("Mr. Donovan"), the founder of the World Marathon Challenge, also ran 7 marathons on 7 continents in under 7 days and acknowledged Ranulph Fiennes and Mike Stroud as the originators of the "777" concept in intercontinental marathon running. The cover page of Runner's World magazine attached hereto as **Exhibit 6** referenced his solo challenge as "7 Marathons 7 Continents 6 Days," to accurately describe the athletic feat completed by Mr. Donovan.

13.   In addition, a "777 Marathon Challenge" was also attempted by a group of six runners in 2015. This was reported in Runner's World, the Daily Telegraph, and one of the runner's blogs. *See* **Composite Exhibit 7.**

14.   Furthermore, a commercial event titled "Triple 7 Quest" was hosted in 2015 by a company called Marathon Adventures, LLC, which likewise promoted the concept of running seven marathons on seven continents in seven days. Several news articles reporting on the "Triple 7 Quest" from 2015 through 2017 are attached hereto as **Composite Exhibit 8**. Unsurprisingly given the nature of the event, the news articles describe the "Triple 7 Quest" as involving "7 marathons, 7 continents, 7 days."

**B.   Creation of the World Marathon Challenge**

15.   Also in 2015, Mr. Donovan, inspired by the same concept as many other fans of international athletic events, founded the World Marathon Challenge ("WMC"). (ECF No. 24-18 at ¶ 2.)

16.   Like the Triple 777 Quest, the WMC was premised in the idea that runners would complete seven marathons on seven continents in seven days.

17. Given his interest in these sort of endurance events, Mr. Kelly attended four WMC events organized during Mr. Donovan's ownership, in 2017, 2018, 2019, and 2023, to generally assist and provide medical back-up services to participants of the WMC. Mr. Kelly and Mr. Donovan had known each other from previously assisting an Irish marathon athlete, Gary Thornton, in his efforts to qualify for the Olympic Games in 2016.

18. During his ownership of the WMC, Mr. Donovan applied for registration of the trademark "7 MARATHONS 7 CONTINENTS 7 DAYS" on June 27, 2016, with the United States Trademark and Patent Office ("USPTO"). A true and correct copy of the application is attached hereto as **Exhibit 9.** The USPTO suspended this application on April 17, 2017, correctly finding that the mark was merely descriptive. A true and correct copy of the Suspension Notice is attached hereto as **Exhibit 10.**

19. Also during his ownership of the WMC, Mr. Donovan applied for registration of the trademark "7 MARATHONS 7 CONTINENTS 7 CONSECUTIVE DAYS" on March 8, 2019. A true and correct copy of the application is attached hereto as **Exhibit 11.** The USPTO suspended this application on September 27, 2019. A true and correct copy of the Suspension Notice is attached hereto as **Exhibit 12.**

20. During his ownership and operation of the WMC from 2015 until 2023, Mr. Donovan never attempted to register the mark "777" or "777 Challenge" with the USPTO. In fact, Mr. Donovan never used "777" as a trademark in connection with the WMC and did not consider "777" to be the WMC's brand. (ECF No. 24-18 at ¶¶ 3, 4).

21. Archived website records of WMC's website demonstrate that neither "777" or "777 Challenge" appeared on WMC's website at any time between 2016 and 2024. *See* **Composite Exhibit 13.**

22.     Similarly, during his ownership and operation    of the WMC from 2015 until 2023 , Mr. Donovan never attempted to register the mark "AROUND THE WORLD IN 7 DAYS" with the USPTO. In fact, Mr. Donovan never used "AROUND THE WORLD IN 7 DAYS" as a trademark in connection with the WMC and did not consider AROUND THE WORLD IN 7 DAYS" to be the WMC's brand. (ECF No. 24-18 at ¶¶ 5, 6).

23.     Ms. Hu, Runbuk's current Chief Executive Office, has contacted Mr. Donovan since the inception of the WMC in 2015 on multiple occasions. At the time, Ms. Hu, who in information and belief is a Chinese national, worked for a Chinese company called Beijing Palace International and wanted to inquire about becoming the WMC's "exclusive partner in China."

24.     During Mr. Donovan's ownership of the WMC, he communicated with Ms. Hu regularly. During these communications, other events with a similar concept to the WMC were discussed on multiple occasions:

a.  Attached as **Exhibit 14** is an email correspondence between Ms. Hu and Mr. Donovan where Ms. Hu asks him about the difference between the WMC and the event organized by Marathon Adventures LLC (the "Triple 7 Quest").

b.  **Exhibit 15** hereto is another email between Mr. Donovan and Ms. Hu dated November 21, 2016, where Ms. Hu states that "there is another 777 in Jan 2017 too."

c.  **Exhibit 16** hereto are accurate and correct communications between Ms. Hu and Mr. Donovan from 2018, where Ms. Hu asks Mr. Donovan if another "777" event was his event, and Mr. Donovan explains, "My event name is World Marathon Challenge, not 777 marathon." To this, Ms. Hu responds, "Yes, you are right. It is WMC."

**C.      Mr. Donovan Sells the World Marathon Challenge**

25.      Ultimately, in December of 2022, Mr. Donovan signed      an agreement to sell the WMC to Ms. Hu and Mr. Wang, through their company Runbuk. A true and accurate copy of the Sales Agreement is attached hereto as **Exhibit 1.**

26.      At no point prior to the sale or during the sale of the WMC from Mr. Donovan to Runbuk did Mr. Donovan represent to Runbuk that "777" or "AROUND THE WORLD IN 7 DAYS" were marks associated with the WMC. (ECF No. 24-18 at ¶ 11).

27.      In alignment with Mr. Donovan's representations, the list of trademarks and domain lists transferred pursuant to the Sales Agreement, attached thereto as Appendix 1, did not include "777", "777 Challenge," or "AROUND THE WORLD IN 7 DAYS," and rather included only the following:

   a.   World Marathon Challenge (standard character mark)

   b.   World Marathon Challenge (logo)

   c.   World Marathon Challenge (logo) for website for virtual events / gps / data … not yet fully registered, just pending operation of virtual event in USA.

   d.   Volcano Marathon (standard character mark)

   e.   Volcano Marathon (logo), includes events + clothing

   f.   7 Marathons Club (standard character mark), for clothing

   g.   Intercontinental Marathon (standard character mark)

   h.   Intercontinental Marathon Club (standard character mark)

   i.   Intercontinental Marathon Club (logo)

   j.   7 Marathons 7 Continents 7 Days (still in dispute with Stephen Hibbs, almost done)

   k.   7 Marathons 7 Continents 7 Consecutive Days, includes events + clothing, pending registration.

**Exhibit 1** at p. 5-6. Importantly, the Sales Agreement provides that "this is the complete list of trademarks and domain names that the SELLER will transfer 100% ownership to the BUYER." *Id.* at p. 6.

**D.**     **Relevant Facts Post Runbuk Acquiring Ownership of the World Marathon Challenge**

28.     After acquiring the WMC, Runbuk started pursuing registration of the marks "7 MARATHONS 7 CONTINENTS 7 DAYS" and "7 MARATHONS 7 CONTINENTS 7 CONSECUTIVE DAYS," filing responses to the Suspension Letters. In support of its position, Runbuk argued, *inter alia*, that these marks had acquired distinctiveness such that registration in the Principal Register was proper.

29.     In response to Runbuk's Responses, the USPTO entered a Non-Final Action on November 9, 2023, finding that Runbuk's purported evidence of acquired distinctiveness of the mark "7 MARATHONS 7 CONTINENTS 7 DAYS" was insufficient and that this mark and variations thereof were used in a descriptive manner to describe a sort of athletic event not limited to the WMC. A true and accurate copy of this Nonfinal Office Action is attached hereto as **Exhibit 17**.

30.     Similarly, a Final Office Action was entered by the USPTO on October 26, 2023, finding that the mark "7 MARATHONS 7 CONTINENTS 7 CONSECUTIVE DAYS" was descriptive and thus registration in the Principal Register was not proper. A true and accurate copy of this Final Office Action is attached hereto as **Exhibit 18**.

31.     Given the USPTO's decision, Runbuk opted for seeking registration of the Supplemental Register and ultimately obtained such registration in 2024 (ECF No. 6-2, 6-3).

E.        **The Inception of The Great World Race**

32.        In the meantime, in 2023, Ice Cap began promoting a new endurance event called The Great World Race ("TGWR").

33.        The concept behind TGWR was that participants would attempt to complete seven marathons on seven continents within one week. The inspiration behind TGWR was the original race undertaken by Ranulph Fiennes and Mike     Stroud twenty years earlier, in 2003.

34.        Ice Cap began advertising the event in 2023 and held its first two events in 2024 and 2025.

35.        Notably, when the TGWR was created, Runbuk had not yet obtained registration of the marks "7 MARATHONS 7 CONTINENTS 7 DAYS" and "7 MARATHONS 7 CONTINENTS 7 CONSECUTIVE DAYS" in the Supplemental Register.

36.        TGWR is advertised using the phrase "7 MARATHONS 7 CONTINENTS 1 WEEK."

37.        In connection with TGWR, Ice Cap, on August 4, 2023, applied to register with the USPTO the trademark "AROUND THE WORLD IN 7 DAYS," a mark inspired from the novel "Around the World in Eighty Days" by Jules Verne. A true and accurate copy of the Application for this mark is attached hereto as **Exhibit 19.**

38.        Then, on September 26, 2024, Ice Cap applied to the USPTO for registration of the mark "777" in the Principal Register in connection with the organizing, arranging, and conducting marathon, running, triathlon, duathlon, and athletic competition events. Ice Cap's Application is attached hereto as **Exhibit 2.**

23

39. Only after seeing Ice Cap submit a trademark application for "777", Runbuk for the first time ever submitted an application for the same mark on October 31, 2024. Runbuk's Application is attached hereto as **Exhibit 3.**

F.      **Runbuk's Wrongful Conduct**

40. Sadly, Runbuk and its owners have refused to fairly compete with Ice Cap and have instead engaged in a pattern of harassment and intimidation to eliminate TGWR and all fair competition.

41. To this effect, in December of 2023, Mr. Wang and Ms. Hu, who are husband and wife and the founders of Runbuk, created a website and social media accounts called the "Not Great World Race" to discredit TGWR and Ice Cap. *See* **Composite Exhibit 20.** Through this account, they falsely accuse TGWR of using deceptive and dishonest tactics to mislead the public, cheating, lying about its offerings, and violating the laws of the United States. *Id.* In these posts, they expressly admit that the "Not Great World Race" was "inspired" by TGWR.

42. Mr. Wang went as far as to apply for registration of the mark "Not Great World Race" with the USPTO. The Application for the "Not Great World Race" is attached hereto as **Exhibit 21.**

43. After a decision by the Trademark Trial and Appeal Board in an inter parties proceeding, Mr. Wang was forced to abandon his application for the "Not Great World Race." *See* **Composite Exhibit 22.**

44. Further, from at least September 2023 through the present, Ms. Hu has contacted Mr. Kelly, as well as vendors and participants of TGWR, accusing TGWR of being the "fake 777" and accusing Mr. Kelly of "doing something illegal."

45.     As an      example, Ms. Hu sent an email dated February 4, 2024, copying multiple third parties, again accusing Mr. Kelly of "doing something illegal", calling him a "thief", and calling TGWR the "fake 777." This email is attached hereto as **Exhibit 23.**

46.     Moreover, Runbuk has used WMC's Instagram account to message participants of TGWR, calling TGWR a "copycat event", accusing Ice Cap and Mr. Kelly of stealing, violating the laws of the United States, and lying to the USPTO. *See* **Composite Exhibit 24**.

47.     Mr. Wang himself, one of the owners of Runbuk, has also personally taken to social media to reach out to participants of TGWR to again accuse TGWR of being a copycat event, accuse Mr. Kelly and Ice Cap of deliberately attempting to confuse people and stealing content, and accuse Mr. Kelly of having no experience in these sorts of event. An example of communications to this effect sent by Mr. Wang to David Kilgore on February 13, 2024, are attached hereto as **Exhibit 25.**

48.     In addition to the alarming and false accusations of illegal and wrongful conduct, the accusations that Mr. Kelly lacks experience in the sort of athletic events at issue here are false, given that Mr. Kelly has been involved in these events since his teenage years, both as a participant, medical professional, and organizer.

49.     Mr. Wang, from his Runbuk email account, has also emailed participants telling them it is "unfortunate to see that you are participating in the so-called 'Great World Race,' which appears to be a copycat event. *See* email dated May 25, 2024, attached hereto as **Exhibit 26**. In this email, Runbuk again accuses MR. Kelly of misleading the public.

50.     Shockingly, in some of the communications by Runbuk to TGWR's participants, Runbuk attempts to limit how participants describe TGWR, going as far as to threaten legal action against them.

a. For instance, in the Instagram communications from WMC's account attached hereto as **Exhibit 24**, Runbuk tells the participant that he cannot use "7 marathons 7 continents 7 days", "7 marathons 7 continents 7 consecutive days" or "777" during his participation in TGWR. Exhibit 24 at p. 2.

b. As a further example, on October 15, 2024, Runbuk sent an email to TGWR's participant Becs Gentry, accusing Ms. Gentry of infringing their trademark rights and threatening with legal action against her if she did not cease and desist from using the phrase "7 Marathons 7 Days 7 Continents" in connection with TGWR. This email is attached hereto as **Exhibit 27.**

c. In another email dated October 23, 2024, Runbuk accuses Alvaro Nunez, a participant and a strategic business contact of TGWR, as well as Mr. Kelly and Ice Cap, of misleading the public and infringing Runbuk's trademarks. This email is attached hereto as **Exhibit 28.** In this email, Runbuk again threatens legal action against Ms. Nunez and 10X Health with legal action for using "the phrase '7 marathons 7 continents 7 days'", or any other similar wording, to describe TGWR.

51.     Runbuk's intent is clear: Runbuk wants to control how participants describe TGWR, intimidating them in an attempt avoid any use of the descriptive phrases "7 marathons 7 continents 7 days" and the like in connection with TGWR. This strategy appears aimed at monopolizing ordinary descriptive language in order to claim secondary meaning and acquired distinctiveness over these phrases.

52.     As if all of this was not enough, Ms. Hu, through her Chinese company Beijing Palace, is a member of TOURS, the international association of marathon tour operators, and has expressly threatened Mr. Kelly to leverage her membership in TOURS to damage his potential to

operate and organize TGWR. Ms. Hu has made similar threats against those vendors, providers, and sponsors who work with Ice Cap, Mr. Kelly, and TGWR. It is notable that if Ms. Hu makes true on her promise, her company Runbuk will be left with no competitor in this market.

53.     This repeated pattern by Runbuk and its owners to interfere with TGWR's relationships with its vendors and participants has caused, and continues to cause, Ice Cap damages in the form of lost business.

54.     Then, in its latest attempt to preclude any competition from TGWR, Runbuk has filed this lawsuit, alleging not just trademark infringement of the marks "7 MARATHONS 7 CONTINENTS 7 DAYS" and "7 MARATHONS 7 CONTINENTS 7 CONSECUTIVE DAYS" but also purported use and rights over the mark "777" dating back to January of 2015. In addition, Runbuk asks that this Court declare Ice Cap's legitimate application for registration of the mark "AROUND THE WORLD IN 7 DAYS" invalid.

55.     As a result of Runbuk's wrongful conduct as alleged herein, Ice Cap and Kelly have been forced to retain the undersigned law firm, for which they must pay reasonable attorney's fees and costs.

## COUNT I
## DECLARATORY JUDGMENT
### (Regarding Ownership of "777" Trademark)

56.     Ice Cap and Mr. Kelly repeat and reallege paragraphs one (1) through fifty-five (55) of as though fully set forth herein.

57.     Prior to the WMC's creation in 2015, other athletic events had taken place referred to as "777 Challenge" or "777 Marathon Challenge" or other variations thereof. **Exhibits 4-8**.

58. During Mr. Donovan's ownership of the WMC from 2015 through to the 2023 event , the WMC never used "777" as a trademark and never considered "777" to be its brand. (ECF NO. 14-16 at ¶¶ 3,4.)

59. The mark "777" was not included as a trademark being transferred to Runbuk in the WMC Sales Agreement. **Exhibit 1 at Appx 1.**

60. Ice Cap attempted registration of the mark "777" with the USPTO on September 26, 2024. **Exhibit 2**.

61. Runbuk first attempted registration of the mark "777" with the USPTO October 31, 2024, after Ice Cap's application. **Exhibit 3.**

62. Neither Runbuk nor WMC were the first to appropriate the mark "777."

63. To the extent that Runbuk claims that the mark "777" was first used by WMC in 2015, others use of this mark pre-dates this first date of use and Mr. Donovan's failed to continuously use the mark from 2015 until 2023.

64. There is an actual, concrete, and live dispute between the parties as to whether Runbuk and WMC were the first to appropriate the mark "777".

65. There is an actual, concrete, and live dispute between the parties as to whether WMC has continuously used the mark "777" from 2015 until present in a way that causes the relevant public to associate the mark with the user.

66. Ice Cap and Mr. Kelly, on the one hand, and Runbuk on the other, have adverse legal interests, of sufficient immediacy and reality to warrant the issuance of declaratory judgment.

**WHEREFORE**, Ice Cap and Mr. Kelly request declaratory judgment in their favor and against Runbuk, declaring that (1) Runbuk and WMC were not the first to appropriate the mark "777" in a way that caused the relevant public to associate the mark with Runbuk and WMC; (2)

28

WMC did not first appropriate the "777" mark in January of 2015; (3) WMC did not continuously use the "777" mark from 2015 until present; (4) Runbuk has no protectable trademark rights over the "777" mark; (5) Ice Cap's first filed application with the USPTO for the mark "777" is not invalid due to lack of priority and likelihood of confusion as Runbuk does not have a valid trademark over "777;" (6) Ice Cap's use and registration of "777" does not create a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement with Runbuk or any of its purported trademarks; (7) Ice Cap is the priority applicant for the mark "777;" and (8) any other relief as this Court deems just and proper, including attorney's fees and costs under 15 U.S.C. § 1117.

**COUNT II**
**DECLARATORY JUDGMENT TO DETERMINE RIGHT TO REGISTRATION OF THE MARK "AROUND THE WORLD IN 7 DAYS"**

67. Ice Cap and Mr. Kelly repeat and reallege paragraphs one (1) through fifty-five (55) of as though fully set forth herein.

68. Ice Cap applied for registration of the mark "AROUND THE WORLD IN 7 DAYS" on August 4, 2023.

69. Runbuk does not have any protectable interest in the mark "AROUND THE WORLD IN 7 DAYS".

70. From the year 2015 until the present, "AROUND THE WORLD IN 7 DAYS" was not used by WMC as a mark and WMC did not consider it to be its brand. (ECF No. 24-18 at ¶¶ 5,6).

71. In fact, the WMC Sales Agreement does not list the mark "AROUND THE WORLD IN 7 DAYS" in the "complete list of trademarks" that were transferred from Mr. Donovan to Runbuk pursuant to the sale. **Exhibit 1** at Appx 1.

29

72.     Neither Runbuk nor the WMC have ever had any involvement or affiliation with the mark "AROUND THE WORLD IN 7 DAYS."

73.     The mark "AROUND THE WORLD IN 7 DAYS" is not likely to create any likelihood of confusion as to source, affiliation, sponsorship, or endorsement with Runbuk, WMC, or any of its purported marks.

74.     Ice Cap has a right to seek registration of the mark "AROUND THE WORLD IN 7 DAYS" with the USPTO.

75.     There is an actual, concrete, and live dispute between the parties as to whether Runbuk or Ice Cap have any protectable interest over the mark "AROUND THE WORLD IN 7 DAYS."

76.     Ice Cap and Mr. Kelly, on the one hand, and Runbuk on the other, have adverse legal interests, of sufficient immediacy and reality to warrant the issuance of declaratory judgment.

**WHEREFORE**, Ice Cap and Mr. Kelly request declaratory judgment in their favor and against Runbuk, declaring that (1) Runbuk has no protectable interest over the mark "AROUND THE WORLD IN 7 DAYS"; (2) Ice Cap has a right to registration of the mark "AROUND THE WORLD IN 7 DAYS"; (3) Ice Cap's application for registration of the mark "AROUND THE WORLD IN 7 DAYS" is not invalid; (4) Ice Cap may legally seek registration with the USPTO of the mark "AROUND THE WORLD IN 7 DAYS" and other marks related to TGWR; (5) Ice Cap is the priority applicant for the mark "AROUND THE WORLD IN 7 DAYS;" (6) Ice Cap's use and registration of the mark AROUND THE WORLD IN 7 DAYS does not tarnish or disparage any of Runbuk or any of its purported trademarks; (7) Ice Cap's use and registration of AROUND THE WORLD IN 7 DAYS does not create a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement with Runbuk or any of its purported trademarks; and (8)

30

any other relief as this Court deems just and proper, including attorney's fees and costs under 15 U.S.C. § 1117.

**COUNT III – CANCELLATION, INVALIDITY, AND UNFORCEABILITY OF "7 MARATHONS 7 CONTINENTS 7 DAYS" and "7 MARATHONS 7 CONTINENTS 7 CONSECUTIVE DAYS"**

77.     Ice Cap and Mr. Kelly repeat and reallege paragraphs one (1) through fifty-five (55) as though fully set forth herein.

78.     Pursuant to 15 U.S.C. § 1119, the Court may order the cancellation of registrations.

79.     Runbuk is the current owner of the marks "7 MARATHONS 7 CONTINENTS 7 DAYS" and "7 MARATHONS 7 CONTINENTS 7 CONSECUTIVE DAYS" in the Supplemental Register.

80.     Runbuk's registration of these marks lacks the legal requirements to be valid, protectable, and enforceable because these marks are descriptive of the goods or services for which they have been registered without having acquired secondary meaning.

81.     The phrases "7 Marathons 7 Continents 7 Days" and "7 Marathons 7 Continents 7 Consecutive Days" fail to function as trademarks because they are widely used by competitors and the media to describe a category of endurance events rather than a single commercial source. These marks do not indicate the source of any good or service but rather describe a sort of athletic event.

82.     This is particularly true considering the descriptive manner in which these marks have been regularly used by the public, the media, participants, and other events of this sort to describe this sort of services – even prior to the creation of the WMC or Runbuk's acquisition thereof.

83. "7 MARATHONS 7 CONTINENTS 7 DAYS" and "7 MARATHONS 7 CONTINENTS 7 CONSECUTIVE DAYS" are not capable of distinguishing Runbuk's goods or services.

84. As a result, the registrations for "7 MARATHONS 7 CONTINENTS 7 DAYS" and "7 MARATHONS 7 CONTINENTS 7 CONSECUTIVE DAYS" should be cancelled, and the registrations and marks therein should be deemed invalid and unenforceable.

**WHEREFORE,** Ice Cap and Mr. Kelly request that the Court enter judgment in their favor and against Runbuk, ordering cancellation of the registrations for the marks "7 MARATHONS 7 CONTINENTS 7 DAYS" and "7 MARATHONS 7 CONTINENTS 7 CONSECUTIVE DAYS," awarding Ice Cap and Mr. Kelly their reasonable attorney's fees and costs under 15 U.S.C § 1117, as well as any other relief as the Court deems just and proper.

## COUNT IV – VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

85. Ice Cap and Mr. Kelly repeat and reallege paragraphs one (1) through fifty-five (55) as though fully set forth herein.

86. Florida Deceptive and Unfair Trade Practices Act was enacted to protect "legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." § 501.202(2), Florida Statutes.

87. The Florida legislature has declared unfair methods of competition, unconscionable acts or practices, and unfair or deceptive practices in the conduct of any trade or commerce unlawful. §501.204(1), Florida Statutes.

88. Anyone aggrieved by violations of the Florida Deceptive and Unfair Trade Practices Act is entitled to declaratory judgment that an act or practice violates the act; and

injunction to enjoin a person who has violated, is violating, or is otherwise likely to violate this part; as well as actual damages. § 501.211, Florida Statutes.

89.     As more fully set forth above, Runbuk is engaging in unfair methods of competition by going beyond legitimate competition on the merits between TGWR and WMC and instead pursuing exclusionary conduct that harms the competitive process.

90.     More specifically, Runbuk has disseminated defamatory and misleading statements about TGWR, Ice Cap, and Mr. Kelly to TGWR's participants, vendors, potential business partners, and other stakeholders, accusing TGWR of being a "fake" or "copycat" event, and accusing Ice Cap and Kelly of engaging in unlawful conduct, cheating, stealing, and employing deceptive practices to mislead the public. *See e.g.*, 20, 23-18.

91.     Many of these actions have been directly aimed at Florida residents, such as Exhibits 20,     25, and 27 herein.

92.     Runbuk has further threatened participants of TGWR with potential legal actions merely for enrolling in or participating, as well as describing, TGWR, thereby attempting to intimidate participants and interfere with the operation of TGWR. *See e.g.*, Exhibits 23 and 28.

93.     Runbuk's founders have gone as far as to create a social media page for the "Not Great World Race", which at all material times has been and continues to be, accessible from Florida. Exhibit 20. Additionally, Mr. Wang has attempted to register this "mark" with the USPTO as a trademark, all to publicly mock and attack TGWR. Exhibit 21.

94.     Further, Runbuk seeks to monopolize ordinary descriptive language that describes the sort of athletic event organized by Runbuk and Ice Cap. In doing so, Runbuk attempts to prevent Kelly, Ice Cap, participants, and even the media from accurately describing TWGR as an

event that involves running seven marathons on seven continents in seven days. *See e.g.*, Exhibit 24 at p. 2, Exhibit 23, Exhibit 28.

95.     In addition, Runbuk has sought to challenge and invalidate Ice Cap's trademark application for marks wholly unrelated to Runbuk's purported marks, such as for example "AROUND THE WORLD IN SEVEN DAYS", despite the clear distinction between these marks and Runbuk's purported marks and despite Runbuk's lack of any legitimate protectable right over these marks.

96.     Runbuk's conduct is designed and aimed at suppressing TGWR as a competing event as part of a coordinated effort to create and maintain market power and develop a monopoly in the market for multi-continent marathon challenges, including events involving running seven marathons on seven continents in seven days.

97.     By acting this way, Runbuk is engaging in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive practices in the conduct of their business, in violation of §501.204(1), Florida Statutes.

98.     Ice Cap and Kelly have suffered damages as a result of Runbuk's, conduct as alleged herein.

**WHEREFORE,** Ice Cap and Kelly hereby seek judgment in their favor and against Runbuk, including declaratory judgment that Runbuk's conduct constitutes unfair competition practices; an order enjoining Runbuk from continuing to engage in unfair competition practices, including but not necessarily limited to an order enjoining them from their continuous interference with vendors and participants of TGWR; granting monetary damages in an amount to be decided at trial; awarding attorney's fees and costs under § 501.211, Fla. Stats., pre-judgment and post-judgment interest as permitted by law; and any other relief as this Court deems just and proper.

### COUNT V – ATTEMPTED MONOPOLIZATION IN VIOLATION OF SECTION 2 OF THE SHERMAN ACT (15 U.S.C. § 2)

99.     Ice Cap and Mr. Kelly repeat and reallege paragraphs one (1) through fifty-five (55) as though fully set forth herein.

100.     This is a civil action under Section 2 of the Sherman Act, 15 U.S.C. § 2, for actual damages, treble damages, the costs of suit, and a reasonable attorney's fees.

101.     At all relevant times, Runbuk has engaged in interstate commerce and in activities substantially affecting interstate commerce within the meaning of the federal antitrust laws.

102.     Runbuk has attempted to monopolize the relevant market by engaging in exclusionary and anticompetitive conduct with the specific intent to obtain monopoly power and with a dangerous probability of achieving such power.

103.     Runbuk, owned by Wang and Hu, organizes the WMC, a direct competitor of TGWR, the event owned and organized by Ice Cap. These events compete within the United States and foreign countries and utilize identical or similar channels of distribution of their product.

104.     The relevant product market is the market for organized athletic events involving running seven marathons on seven continents in seven days. This market consists of specialized products or services for endurance events that are reasonably interchangeable by consumers seeking to complete a multi-continent marathon challenge within a seven-day period.

105.     Other than the WMC and TGWR, there are no other events offering the structure of seven marathons in seven continents in seven days.

106.     The relevant geographic market is the global market as customers purchase the services worldwide to participate in the athletic events. Moreover, the services are provided worldwide as they involve running marathons across seven continents. This market constitutes a relevant economic market for purposes of antitrust analysis.

35

107.     Further, because TGWR and WMC both organize at least one race in the United States, specifically in Miami, Florida, and they both advertise in the United States, the United States constitutes a relevant geographic sub-market for purposes of antitrust analysis.

108.     At all relevant times, Runbuk has possessed substantial market power within the relevant market and held a dominant share of that market, being one out of only two events currently operating within this niche. Thus, absent competition from TGWR, there is a dangerous probability that Runbuk will obtain monopoly power. This is particularly true considering that there are less than one hundred participants worldwide that sign up for each event every year.

109.     Participants seeking to complete the "seven continents in seven days" challenge view WMC and TGWR as the only available substitutes.

110.     Organizing an event involving seven marathons on seven continents within seven days requires significant capital investment, specialized logistical expertise, and extensive coordination across multiple jurisdictions worldwide. Such events require charter aircraft capable of transporting participants and staff across continents on a compressed schedule, permits and operational coordination with local authorities and race organizers on multiple continents, global marketing and participant recruitment, and sophisticated operational planning. These substantial logistical, financial, and reputational barriers significantly limit new entry and increase the likelihood that exclusionary conduct directed at the only competing event will enable Runbuk to achieve and maintain monopoly power in the relevant market.

111.     As described in detail above, beginning in 2023 when Runbuk acquired the WMC, Runbuk has engaged in a course of anticompetitive and exclusionary conduct designed to eliminate Ice Cap and other potential competitors from competing effectively in the field of organizing seven

36

marathons in seven continents in seven days, thereby seeking to secure a lucrative monopoly in the relevant market.

112.    Runbuk has engaged in anticompetitive conduct by spreading defamatory statements about TGWR, Ice Cap, and Mr. Kelly to participants and vendors, threatening TGWR participants with legal action, publicly accusing Mr. Kelly of illegal activity and copying Runbuk's events, creating a website for the "Not Great World Race" and attempting to register it as a trademark to disparage TGWR, seeking to monopolize descriptive marks for such athletic events, and attempting to invalidate Ice Cap's unrelated mark applications, including "AROUND THE WORLD IN SEVEN DAYS," despite lacking any protectable rights.

113.    Runbuk's specific intent to monopolize is evidenced by, among other things, its efforts to discourage and deter participants from enrolling in TGWR, threatening participants of TGWR with legal action against them for enrolling in the TGWR and using descriptive phrases to describe TGWR.

114.    In addition, Ms. Hu, one of Runbuk's owners, has threatened Mr. Kelly and third parties associated with TGWR to use her position in TOURS, the international association of marathon tour operators, to damage and ultimately impede the organization of TGWR, further evidencing her clear attempts to monopolize the relevant market.

115.    All of this has been done by Runbuk to prevent Ice Cap as a competitor from operating in the relevant market, leaving Runbuk as the sole party in control of said market.

116.    The foregoing conduct lacks any legitimate procompetitive justification and was undertaken for the purpose and effect of excluding Runbuk's only current competitor, Ice Cap, from the relevant market.

117. On information and belief, Runbuk's illegal anti-competitive conduct was intended to and has had the effect of restricting entry into the relevant global and U.S. market, protecting Runbuk's dominant share of the relevant market from competition.

118. Runbuk's illegal anti-competitive conduct has had and continues to have significant negative effects for consumers in the market and has precluded the availability of multiple alternate competitors with attributes favored by consumers.

119. If Runbuk succeeds in obtaining a monopoly in the relevant economic market and submarket described above, these acts will harm and restrain competition and cause antitrust injury in those markets in a manner prohibited by the Sherman Act.

120. Runbuk's conduct and actions are not justified by any countervailing efficiencies or legitimate business reasons.

121. As a direct and proximate result of the wrongful conduct alleged herein, there exists a dangerous probability that Runbuk will achieve monopoly power in the relevant market.

122. The unlawful conduct by Runbuk has caused and continues to cause Ice Cap and Mr. Kelly to suffer injury to their business and property, including lost profits, lost customers, reputation harm, and damage to its competitive position.

123. The conduct by Runbuk has also harmed competition and consumers in the relevant market by restricting output, reducing consumer choice, deterring participation in competing events, and impairing the competitive process.

**WHEREFORE**, Ice Cap and Mr. Kelly respectfully request that the Court adjudge and decree that Runbuk has violated Section 2 of the Sherman Act, 15 U.S.C. § 2; enjoin Runbuk and its agents from continuing the unlawful conduct described herein; award Ice Cap and Mr. Kelly treble damages pursuant to 15 U.S.C. § 15; award Ice Cap and Mr. Kelly the costs of suit

and reasonable attorneys' fees as well as pre- and post-judgment interest; and any other relief as the Court deems just and proper.

### COUNT VI – TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS

124. Ice Cap and Mr. Kelly repeat and reallege paragraphs one (1) through fifty-five (55) as though fully set forth herein.

125. Ice Cap has existing and prospective business relationships with vendors, service providers, sponsors, and participants in connection with the organization and operation of TGWR.

126. Runbuk has knowledge of Ice Cap's business relationships.

127. Runbuk has intentionally and unjustifiably interfered with Ice Cap's business relationships in manner set forth herein, including but not limited to disseminating defamatory statements about TGWR, Ice Cap, and Mr. Kelly, threatening TGWR participants with potential legal action, and attempting to discourage vendors, partners, and participants from associating with or participating in TGWR. *See* Exhibits 20, 23-28.

128. As a direct result of Runbuk's wrongful and intentional interference, Ice Cap and Mr. Kelly have suffered damages, including lost registration of race participants, as well as relationships with sponsors and travel partners.

**WHEREFORE**, Ice Cap and Mr. Kelly respectfully request that this Court enter judgment in their favor and against Runbuk for compensatory damages in an amount to be proven at trial; special damages as permitted by law; punitive damages as allowed under Florida law; pre-judgment and post-judgment interest as permitted by law; costs of this action; and such other and further relief as the Court deems just and proper.

## COUNT VII – DEFAMATION AND DEFAMATION *PER SE*

129.    Ice Cap and Mr. Kelly repeat and reallege paragraphs one (1) through fifty-five (55) as though fully set forth herein.

130.    As detailed below and demonstrated by the exhibits attached herein, Runbuk has made and published, orally and in writing, statements to third parties, including participants, vendors, and members of the public, accusing Ice Cap and Mr. Kelly of engaging in "illegal" conduct, cheating, using deceptive and dishonest tactics, misleading the public, stealing content, violating the laws of the United States, and lying to the USPTO. Exhibits 20, 23    -28.

131.    These defamatory statements have been published from Runbuk's email accounts, WMC's Instagram account, as well as by Runbuk's founders.

132.    On information and belief, discovery will uncover several additional defamatory statements made by Runbuk against Ice Cap and Mr. Kelly.

133.    These false and defamatory statements by Runbuk attribute to Ice Cap and Mr. Kelly conduct, characteristics, or conditions incompatible with the proper exercise of a lawful business, trade, profession, or office.

134.    These defamatory statements by Runbuk have subjected Ice Cap and Mr. Kelly to hatred, distrust, ridicule, contempt, and disgrace, and have damages their reputation in the running and endurance community.

135.    The statements described above are false statements of fact and not opinion.

136.    These defamatory statements by Runbuk have injured Ice Cap and Mr. Kelly in their trade or profession.

137.    Runbuk made these defamatory statements with the requisite intent of malice or, at a minimum, negligence.

138.    As a result of the wrongful defamatory statements by Runbuk, Ice Cap and Kelly have suffered damages, including but not limited to harm to their business reputations, loss of profits and business opportunities, and other damages.

WHEREFORE, Ice Cap and Kelly respectfully request that this Court enter judgment in their favor and against Runbuk for compensatory damages in an amount to be proven at trial; special damages as permitted by law; punitive damages as allowed under Florida law; pre-judgment and post-judgment interest as permitted by law; costs of this action; and such other and further relief as the Court deems just and proper.

Dated: March 17, 2026,                                    Respectfully submitted,

**AINSWORTH + CLANCY, PLLC**
1826 Ponce De Leon, Blvd.
Coral Gables, FL 33134
Telephone: (305) 600-3816
Facsimile: (305) 600-3817
*Counsel for Plaintiffs*

By: /s/ *Maria K. Casariego*
Maria K. Casariego, Esq.
Florida Bar No. 1058623
Ryan Clancy, Esq.
Florida Bar No. 117650
Email: maria@business-esq.com
Email: service1@business-esq.com

41

<u>**CERTIFICATE OF SERVICE**</u>

**I HEREBY CERTIFY** that on this 17th day of March 2026, the foregoing document was electronically filed with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified below, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing:

James E. Gillenwater (SBN 1013518)
GREENBERG TRAURIG LLP
333 SE 2nd Avenue, Suite 4400
Miami, FL 33131
Tel: (305) 579-0767
gillenwaterj@gtlaw.com

David Bloch*
GREENBERG TRAURIG LLP
101 2nd St, San Francisco, CA 94105
Tel: (415) 655-1300
david.bloch@gtlaw.com

Barry Horwitz*
Katherine Cronin*
Michelle Kim*
GREENBERG TRAURIG LLP
360 N Green St, Chicago, IL 60607
Tel: (312) 456-8400
barry.horwitz@gtlaw.com
cronink@gtlaw.com
michelle.kim@gtlaw.com

By: s/ *Maria K. Casariego*
Maria K. Casariego, Esq.